**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Civil Action No. 1:19-cv-07797-GBD

BEST BRANDS CONSUMER PRODUCTS,
INC.,

                 Plaintiff,

v.

PREMIUM RETAIL SERVICES, INC.,

                 Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PREMIUM RETAIL SERVICES, INC.'S MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT

HERRICK, FEINSTEIN LLP
Ronald J. Levine
rlevine@herrick.com
Jason A. D'Angelo
jdangelo@herrick.com
Two Park Avenue
New York, NY 10016
Tel: 212-592-1400

SPENCER FANE LLP
Erik O. Solverud (admitted *pro hac vice*)
esolverud@spencerfane.com
Arthur D. Gregg (admitted *pro hac vice*)
agregg@spencerfane.com
One North Brentwood Blvd., Suite 1000
St. Louis, MO 63105
Tel: 314-863-7733

*Attorneys for Defendant Premium Retail
Services, Inc.*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

LEGAL STANDARD.......................................................................................................... 3

      A.     Rule 12(b)(6) ....................................................................................... 3

      B.     Rule 9(b) .............................................................................................. 3

      C.     Rule 12(e)............................................................................................. 4

ARGUMENT ...................................................................................................................... 4

      POINT I ................................................................................................................ 4

            BBCP FAILS TO STATE A CLAIM FOR  BREACH OF AN ORAL AND/OR
            WRITTEN CONTRACT BY PREMIUM ............................................................. 4

      POINT II .............................................................................................................. 8

            BBCP FAILED TO STATE A CLAIM FOR  BREACH OF EXPRESS
            WARRANTIES ......................................................................................... 8

      POINT III............................................................................................................. 10

            BBCP'S CLAIM FOR UNJUST ENRICHMENT IS PRECLUDED  BY BBCP'S
            CLAIM FOR BREACH OF CONTRACT ........................................................... 10

      POINT IV ............................................................................................................. 11

            BBCP'S FRAUD CLAIM IS RIDDLED WITH PLEADING DEFECTS
            REQUIRING ITS DISMISSAL ........................................................................ 11

                A.     BBCP Failed To Plead Fraud With Particularity As Required By
                      Rule 9(b) ...................................................................................... 11

                B.     BBCP's Fraud Claim Is Precluded By Its Breach Of Contract
                      Claim.................................................................................. 13

                C.     To The Extent It Seeks To Recover Lost Profits, BBCP's Fraud
                      Claim Is Barred By The "Out-of-Pocket" Rule ........................... 15

      POINT V .............................................................................................................. 16

            BBCP FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH
            EITHER A CONTRACT OR A PROSPECTIVE BUSINESS RELATION ....... 16

                A.     BBCP Fails To State A Claim For Tortious Interference With
                      Contract....................................................................................... 16

                B.     BBCP Fails To State A Claim For Tortious Interference With
                      Prospective Business Relations.................................................... 17

                  C.     BBCP's Tortious Interference Claims Is Duplicative Of Its Breach
                      Of Contract Claim....................................................................... 19

POINT VI.................................................................................................................. 20

COUNT VI FOR TRADE DEFAMATION FAILS TO STATE A VIABLE
CLAIM.................................................................................................................... 20

    A.    BBCP Fails To State A Claim For Trade Defamation Because It
Does Not (and Cannot) Allege Special Damages ........................ 20

    B.    BBCP Cannot Salvage Its Failed Trade Defamation Claim Under
A Common Law Theory Of Defamation ...................................... 21

POINT VII ............................................................................................................ 24

ALTERNATIVELY, BBCP SHOULD BE REQUIRED TO PROVIDE A MORE
DEFINITE AND CERTAIN STATEMENT OF ITS CLAIMS.......................... 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AHW Inv. P'ship, MFS, Inc. v. Citigroup Inc.*,
661 Fed. Appx. 2 (2d Cir. 2016) ........................................................................15

*Albert v. Loksen*,
239 F.3d 256 (2d Cir. 2001) ...............................................................................23

*Allen v. Robinson*,
10-CV-7118-SAS, 2011 WL 5022819 (S.D.N.Y. October 19, 2011) .......................5

*Allison v Round Table Inv. Mgt. Co., LP*,
10-CV-01144-GBD, 2010 WL 4456648 (SDNY Oct. 22, 2010) ..........................15

*Archie Comic Publications, Inc. v. DeCarlo*,
258 F. Supp. 2d 315 (S.D.N.Y. 2003) .....................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................3

*Barrett v. Toroyan*,
39 A.D.3d 366, 833 N.Y.S.2d 497 (N.Y. 2007) ....................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................3

*Berman v. Sugo LLC*,
580 F.Supp.2d 191 (S.D.N.Y. 2008) ......................................................................5

*Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*,
842 F.2d 578 (2d Cir. 1987) ...................................................................................6

*Bloch v. Gerdis*,
10-CV-5144-PKC-AJP, 2011 WL 6003928 (S.D.N.Y. Nov. 30, 2011) ...................5

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*
98 F.3d 13 (2d Cir. 1996) .................................................................................11, 14

*Brookhaven Hous. Coal. v. Solomon*,
583 F.2d 584 (2d Cir. 1978) ...................................................................................6

*Broughel v Battery Conservancy*,
07-CV-7755-GBD, 2009 WL 928280 (S.D.N.Y Mar. 30, 2009) .............................6

*Burrowes v. Combs*,
   25 A.D.3d 370, 808 N.Y.S.2d 50 (1st Dep't 2006) ...............................................16

*Camp Summit of Summitville, Inc. v. Viniski*,
   06-CV-4994-CM-GAY, 2007 WL 1152894 (S.D.N.Y. Apr. 16, 2007)..................................22

*Chandok v. Klessig*,
   632 F.3d 803 (2d Cir. 2011)...........................................................................22

*Chiarelli v. Nissan N. Am., Inc.*,
   14-CV-4327 NGG VVP, 2015 WL 5686507 (E.D.N.Y. Sept. 25, 2015)..............................10

*Choquette v. Motor Info. Sys., Inc.*,
   15-CV-9338-VEC, 2017 WL 3309730 (S.D.N.Y. Aug. 2, 2017) ........................................19

*Christopher Lisa Matthew Policano, Inc. v. North American Precis Syndicate, Inc.*,
   129 A.D.2d 488, 514 N.Y.S.2d 239 (1st Dept.1987)........................................................21

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*,
   516 N.E.2d 190, 70 N.Y.2d 382 (1987)............................................................10, 19

*Cleveland Wrecking Co. v. Hercules Constr. Corp.*,
   23 F.Supp.2d 287 (E.D.N.Y. September 29, 1998) .........................................................5

*Clopay Corp. v. Shemesh*,
   17-CV-10194-JPO, 2018 WL 6025867 (S.D.N.Y. Nov. 16, 2018)........................................12

*Cohen v. Davis*,
   926 F. Supp. 399 (S.D.N.Y. 1996) ...............................................................16, 17

*Collins v. Travers Fine Jewels Inc.*,
   16-CV-03780-SN, 2017 WL 1184305 (S.D.N.Y. Mar. 29, 2017) ..........................................20

*Cooper Square Realty, Inc. v. A.R.S. Management, Ltd.*,
   181 A.D.2d 551, 581 N.Y.S.2d 50 (1st Dep't 1992) ...................................................6

*Cordova v. Smith & Nephew, Inc.*,
   14-CV-351-JFB-ARL, 2014 WL 3749421 (E.D.N.Y. July 30, 2014)....................................9

*Cosan v. St. Eats, Ltd.*,
   15-CV-00858-RJA-JJM, 2016 WL 8416456 (W.D.N.Y. Mar. 14, 2016) ................................5

*Daley v. McNeil Consumer Prod., Co.*,
   164 F.Supp.2d 367 (S.D.N.Y.2001).....................................................................9

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
   822 F.2d 1242 (2d Cir. 1987).........................................................................12

iv

*Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.*,
  349 F. App'x 551 (2d Cir. 2009) ...........................................................5

*Eternity Global Master Fund, Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004)...............................................................12

*Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*,
  382 F. App'x 110 (2d Cir. 2010) ...........................................................8

*Ferrari Club of Am., Inc. v. Bourdage*,
  6:12-CV-06530-EAW, 2017 WL 6419061 (W.D.N.Y. Apr. 25, 2017) ...................13

*Fieger v. Pitney Bowes Credit Corp.*,
  251 F.3d 386 (2d Cir.2001).................................................................25

*Fisher v. APP Pharm., LLC*,
  783 F.Supp.2d 424 (S.D.N.Y.2011)..........................................................9

*FRA S. p. A. v. Surg-O-Flex of Am., Inc.*,
  415 F. Supp. 421 (S.D.N.Y. 1976) ..........................................................4

*Gelber v. Stryker Corp.*,
  788 F.Supp.2d 145 (S.D.N.Y.2011)..........................................................9

*GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*,
  449 F.3d 377 (2d Cir. 2006)................................................................25

*Harsco Corp. v. Segui*,
  91 F.3d 337 (2d Cir. 1996).................................................................12

*Horowitz v. Nat'l Gas & Elec., LLC*,
  17-CV-7742-JPO, 2018 WL 4572244 (S.D.N.Y. Sept. 24, 2018) .........................19

*In Touch Concepts, Inc. v. Cello P'ship*,
  949 F.Supp.2d 447 (S.D.N.Y. 2013)......................................................22, 23

*Israel v. Wood Dolson Co.*,
  134 N.E.2d 97, 1 N.Y.2d 116 (N.Y. 1956) .................................................16

*Jin Yung Chung v. Sano*,
  10-CV-2301-DLI-CLP, 2011 WL 1298891 (E.D.N.Y. Mar. 31, 2011) ....................20

*Jurlique, Inc. v. Austral Biolab Pty., Inc.*,
  187 A.D.2d 637, 590 N.Y.S.2d 235 (2d Dep't 1992) ....................................20

*Kirby v. Wildenstein*,
  784 F. Supp. 1112 (S.D.N.Y. 1992)........................................................20

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006)................................................................18

*Kowalchuk v. Stroup*,
   61 A.D.3d 118, 873 N.Y.S.2d 43 (1st Dep't. 2009) .................................5

*Kraft v. Staten Island Boat Sales, Inc.*,
   715 F.Supp.2d 464 (S.D.N.Y.2010)......................................................9

*Kusch v. Mishkin (In re Adler, Coleman Clearing Corp.)*,
   95-08203 JLG, 1998 WL 551972 (Bankr. S.D.N.Y. Aug. 24, 1998)..................18

*United States ex rel. Ladas v. Exelis, Inc.*,
   824 F.3d 16 (2d Cir. 2016)................................................................4

*Lama Hldg. Co. v. Smith Barney Inc.*,
   668 N.E.2d 1370, 646 N.Y.S.2d 76 (N.Y. 1996)................................15, 16

*Liberman v. Gelstein*,
   605 N.E.2d 344, 80 N.Y.2d 429 (N.Y. 1992) ........................................23

*Lincoln First Bank v. Siegel*,
   60 A.D.2d 270, 400 N.Y.S.2d 627 (4th Dept.1977) ................................21

*In re Maxwell Commc'n Corp.*,
   198 B.R. 63 (S.D.N.Y. 1996)..............................................................6

*McKernin v. Fanny Farmer Candy Shops, Inc.*,
   176 A.D.2d 233 574 N.Y.S.2d 58 (2d Dep't 1991) ...............................13, 14

*Metropolitan Transp. Auth. v. Triumph Advertising Productions*,
   116 A.D.2d 526, 497 N.Y.S2d 673, 675 (1st Dep't 1986) ........................13

*MS Elmsford Snack Mart, Inc. v. Weil*,
   14-CV-2226-NSR, 2018 WL 1281829 (S.D.N.Y. Mar. 5, 2018)....................6

*Norguard Ins. Co. v. RCJ Constr. Servs. Corp.*,
   14-CV-00432, 2018 WL 1178034 (E.D.N.Y. Jan. 19, 2018) .....................11

*O'Brien v. Nat'l Prop. Analysts Partners*,
   936 F.2d 674 (2d Cir. 1991).............................................................3

*U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*,
   822 F.3d 650 (2d Cir. 2016)............................................................13

*Offor v. Mercy Med. Ctr.*,
   171 A.D.3d 502, 98 N.Y.S.3d 69 (1st Dep't 2019) ...............................22

*Olsson v Vertis Communications*,
   09-CV-5428-GBD, 2009 WL 5194979 (S.D.N.Y. Dec. 29, 2009) ........................................24

*Optima Media Grp. Ltd. v. Bloomberg L.P.*,
   383 F. Supp. 3d 135 (S.D.N.Y. 2019)....................................................................................3

*Papa's–June Music, Inc. v. McLean*,
   921 F.Supp. 1154 (S.D.N.Y.1996) .......................................................................................13

*Pelman ex rel. Pelman v. McDonald's Corp.*,
   396 F. Supp. 2d 439 (S.D.N.Y. 2005)...................................................................................24

*Price v. City of Troy New York*,
   1:12-CV-0815 DNH/CFH, 2014 WL 2926479 (N.D.N.Y. June 26, 2014)............................4

*Priority Fulfillment Servs., Inc. v. Gaiam Americas Inc.*,
   17-CV-5504-PAE, 2018 WL 5981950 (S.D.N.Y. Nov. 14, 2018).........................................13

*Reyes v. Lincoln Auto. Fin. Services*,
   861 F.3d 51 (2d Cir. 2017).....................................................................................................6

*Rich v. Fox News Network, LLC*,
   18-2321-CV, 2019 WL 4383204 (2d Cir. Sept. 13, 2019) ...................................................16

*Ross v. Bolton*,
   904 F.2d 819 (2d Cir. 1990)...................................................................................................4

*Schimmenti v. Ply Gem Indus., Inc.*,
   156 A.D.2d 658, 549 N.Y.S.2d 152 (2d Dep't 1989) ..........................................................8

*Schoninger v. Green*,
   15-CV-2233-PAC, 2018 WL 722838 (S.D.N.Y. Feb. 5, 2018) ............................................5

*Schurr v. Austin Galleries of Ill.*,
   719 F.2d 571 (2d Cir.1983)....................................................................................................5

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994)...................................................................................................11

*Sims v. Blanchris, Inc.*,
   648 F. Supp. 480 (S.D.N.Y. 1986) ........................................................................................6

*Sirohi v. Trustees of Columbia Univ.*,
   97-CV-7912, 1998 WL 642463 (2d Cir. Apr.16, 1998) ......................................................6

*U.S. ex rel. Smith v. New York Presbyterian Hosp.*,
   06-CV-4056-NRB, 2007 WL 2142312 (S.D.N.Y. July 18, 2007) ........................................22

*Southwestern Invs. Group, LLC v. JH Portfolio Deb Equities, LLC*,
    169 A.D.3d 1510, 93 N.Y.S.3d 775 (4th Dep't 2019) ............................................15

*Statler v. Dell, Inc.*,
    775 F.Supp.2d 474 (E.D.N.Y.2011) .......................................................10

*Steginsky v. Xcelera Inc.*,
    741 F.3d 365 (2d Cir. 2014) ..................................................................3

*Sterling v. Mercantile Adjustment Bureau, LLC*,
    11-CV-639A, 2011 WL 4915813 (W.D.N.Y. Oct. 7, 2011) ....................................4

*Ulloa v. Takata Corp., TK Holdings Inc.*,
    16-CV-6225-KMW-BCM, 2017 WL 1194691 (S.D.N.Y. Mar. 30, 2017) ............................24

*Von Rohr Equip. Corp. v. Tanner Bolt & Nut Corp.*,
    17-CV-2913-NGG-RER, 2017 WL 5184676 (E.D.N.Y. Nov. 7, 2017) ..............................17

*Waste Distillation Tech. v. Blasland & Bouck Engs., P.C.*,
    136 A.D.2d 633, 523 N.Y.S.2d 875 (2d Dep't 1988) .............................................20

*Weider Health & Fitness v. Austex Oil Ltd.*,
    17-CV-2089-RMB-OTW, 2018 WL 5919521 (S.D.N.Y. Nov. 13, 2018) ............................13

*Winicki v. City of Olean*,
    203 A.D.2d611 N.Y.S.2d 379, 380 (4th Dep't 1994) ............................................16

**Other Authorities**

Federal Rules of Civil Procedure Rule 9(b) ..............................................................3, 11

Federal Rules of Civil Procedure Rule 12(e) ...........................................................4, 24

*Prosser & Keeton on Torts*, 5th ed. (1984 & supp.1988), § 128 ..................................21

Defendant Premium Retail Services, Inc. ("Premium") respectfully submits this memorandum of law in support of its motion to dismiss the complaint (the "Complaint") filed by plaintiff Best Brands Consumer Products, Inc. ("BBCP") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, and alternatively its motion to require BBCP to provide a more definite and certain statement of its claims pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

BBCP supplies Walmart Inc. ("Walmart") and other retailers with clip strip products, which are products suspended from a strip of plastic positioned at convenient locations within a store, such as at the end of aisles (or endcap displays) or checkout lanes.  Complaint, ECF # 1 ("Compl.") at ¶¶ 11-12.  BBCP alleges that Premium is a merchandising firm that was hired to service Walmart's entire clip strip program, and that all clip strip product suppliers were required to work with Premium in connection with the merchandising of their products at Walmart stores. (*Id*. at ¶¶ 16, 19).  BBCP alleges that the terms of any agreement with Premium were negotiated by Walmart and accepted by certain clip strip product suppliers, including BBCP.  (*Id*. at ¶ 20).

BBCP purports to bring this action against Premium in connection with the alleged breach of an "oral and/or written contract to provide certain merchandising services" for BBCP's clip strip products in Walmart retail stores.  (*Id*. at ¶ 1).  In its Complaint, BBCP purports to assert six counts against Premium: breach of contract (Count I); breach of express warranties (Count II); unjust enrichment in quantum meruit for failure to perform services (Count III); fraud (Count IV); tortious interference with contract and prospective economic relations (Count V); and trade defamation (Count VI).

BBCP, however, fails to assert any *viable* causes of action against Premium. Instead, BBCP pleads (*ad nauseam*) amorphous vagaries, which fail to state a claim upon which relief can be granted. To be clear, BBCP cannot even represent to this Court whether it is suing under an oral or written agreement. (*Id*. at ¶ 1). BBCP's reliance on "an oral and/or written contract" is fatal to its breach of contract claim. BBCP's decision to hide the ball as to the very contract it is suing under appears to be a tactical attempt to avoid the obvious reality that BBCP is unable to identify a single contractual term allegedly breached by Premium. Realizing its breach of contract claim is baseless, BBCP resorts to asserting quasi-contractual claims for breach of warranties and unjust enrichment to salvage its Complaint. However, these claims are duplicative of, and subsumed within, the "oral and/or written" agreement, which BBCP refuses to identify sufficiently for this Court. Accordingly, Counts I, II and III of the Complaint must be dismissed for failure to state a claim.

BBCP's fraud claim in Count IV is not only precluded by BBCP's breach of contract claim, but it also fails to satisfy the heightened pleading requirements of Rule 9(b) and violates New York's "out-of-pocket" rule by seeking to recover lost profits damages.

Similarly, BBCP's tortious interference and trade defamation claims are a mix-matched jumble, which fail to set forth sufficient facts upon which *any* claim for relief could possibly be granted. Again, the ambiguities in BBCP's allegations appear strategic and embody exactly the type of "shotgun pleading" that Rules 8(a) and 9(b) rightly prohibit. To the extent *anything* is clear from Counts V and VI of the Complaint, it is that Premium's alleged conduct falls within well-recognized exceptions to both tortious interference and defamation claims, requiring the dismissal of these claims as well.

In the alternative to dismissal, BBCP must be required to provide a more definite and certain statement of its claims against Premium pursuant to Rule 12(e).  As currently constructed, the allegations against Premium are so vague and ambiguous that Premium cannot: (i) reasonably frame a responsive pleading; (ii) effectively define the bounds of discovery; or (iii) mount a defense to such allegations at trial.  Allowing BBCP's claims to stand (especially as currently pled) would substantially prejudice Premium.  Accordingly, to the extent BBCP's claims are not outright dismissed (and they should be), they need to be made more definite and certain pursuant to Rule 12(e).

## LEGAL STANDARD

### A.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlements to relief."  *Twombly*, 550 U.S. at 558.  Although the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

### B.    Rule 9(b)

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "The purpose of Rule 9(b) is threefold—it is designed [1] to provide a defendant with fair notice of a plaintiff's claim, [2] to safeguard a

defendant's reputation from 'improvident charges of wrongdoing,' and [3] to protect a defendant against the institution of a strike suit." *Optima Media Grp. Ltd. v. Bloomberg L.P.*, 383 F. Supp. 3d 135, 142 (S.D.N.Y. 2019) (quoting *O'Brien v. Nat'l Prop. Analysts Partners,* 936 F.2d 674, 676 (2d Cir. 1991)).  The Second Circuit has made clear that it "recognize[s] and rigorously enforce[s] these salutary purposes of Rule 9(b)[.]" *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 26 (2d Cir. 2016) (quoting *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990)).

### C.      Rule 12(e)

Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." *Price v. City of Troy New York*, 1:12-CV-0815 DNH/CFH, 2014 WL 2926479, at *3 (N.D.N.Y. June 26, 2014) (quoting Fed. R. Civ. P 12(e)).  A Rule 12(e) motion should be granted where "the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it."  *See id.* (quoting *Sterling v. Mercantile Adjustment Bureau, LLC*, 11-CV-639A, 2011 WL 4915813, at * 1–2 (W.D.N.Y. Oct. 7, 2011); *see also FRA S. p. A. v. Surg-O-Flex of Am., Inc.*, 415 F. Supp. 421, 427 (S.D.N.Y. 1976) (noting "complaint as drafted" must be "sufficiently definite and intelligible as to enable defendants to frame a responsive pleading").

### **ARGUMENT**

### **POINT I**

### **BBCP FAILS TO STATE A CLAIM FOR**
### **BREACH OF AN ORAL AND/OR WRITTEN CONTRACT BY PREMIUM**

BBCP's breach of contract claim (Count I) should be dismissed in its entirety because BBCP failed to sufficiently plead the existence of an enforceable contract (oral or written).  BBCP asserts the existence of an "oral and/or written agreement," but fails to attach a copy of the contract

(to the extent one even exists), and makes no attempt whatsoever to identify the essential terms of any purported agreement between BBCP and Premium.

"[T]he fundamental basis of a valid enforceable contract is a meeting of the minds of the parties.  If there is no meeting of the minds on all essential terms, there is no contract.  This is because an enforceable contract requires mutual assent to essential terms and conditions thereof." *See Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.*, 349 F. App'x 551, 554 (2d Cir. 2009) (quoting *Schurr v. Austin Galleries of Ill.*, 719 F.2d 571, 576 (2d Cir.1983)).  A plaintiff must "show[] that the meeting of the minds necessary for the existence of an enforceable contract took place."  *See Dreyfuss,* 349 Fed. App'x. at 554; *see also Allen v. Robinson,* 10-CV-7118-SAS, 2011 WL 5022819, at *5 (S.D.N.Y. October 19, 2011) (quoting *Berman v. Sugo LLC*, 580 F.Supp.2d 191, 202 (S.D.N.Y. 2008) ("A breach of contract claim 'that fails to allege facts sufficient to show that an enforceable contract existed between the parties is subject to dismissal.'")).

To the extent BBCP alleges the existence of an oral agreement, it "faces a heavier burden." *Bloch v. Gerdis,* 10-CV-5144-PKC-AJP, 2011 WL 6003928, at *3 (S.D.N.Y. Nov. 30, 2011) (quoting *Cleveland Wrecking Co. v. Hercules Constr. Corp.,* 23 F.Supp.2d 287, 293 (E.D.N.Y. September 29, 1998)).  "To ensure that parties are not trapped into surprise contractual obligations that they never intended, more than agreement on each detail is required, **there must be an overall agreement to enter into the binding contract**." *See id.* (emphasis added); *see also Schoninger v. Green*, 15-CV-2233-PAC, 2018 WL 722838, at *3 (S.D.N.Y. Feb. 5, 2018) (citing *Bloch v. Gerdis*, 10-CV-5144-PKC-AJP, 2011 WL 6003928 (S.D.N.Y. Nov. 30, 2011)).

Here, where BBCP has, in essence, pled the existence of a written contract, it cannot sufficiently establish a "meeting of the minds" between BBCP and Premium.  "To establish a 'meeting of the minds', there must be an 'agreement on all essential terms.'"  *Cosan v. St. Eats,*

*Ltd.*, 15-CV-00858-RJA-JJM, 2016 WL 8416456, at *2 (W.D.N.Y. Mar. 14, 2016) (quoting *Kowalchuk v. Stroup*, 61 A.D.3d 118, 121, 873 N.Y.S.2d 43, 46 (1st Dep't. 2009)).   Notably, "[r]elief 'for an alleged breach of a written contract cannot be granted where [1] the alleged contract has not been produced … [and] … [2] essential terms of the alleged contract are in doubt….'"  *See MS Elmsford Snack Mart, Inc. v. Weil*, 14-CV-2226-NSR, 2018 WL 1281829, at *4 (S.D.N.Y. Mar. 5, 2018) (quoting *Sims v. Blanchris, Inc.,* 648 F. Supp. 480, 485 (S.D.N.Y. 1986)); *see also Archie Comic Publications, Inc. v. DeCarlo,* 258 F. Supp. 2d 315, 329 (S.D.N.Y. 2003); *Broughel v Battery Conservancy*, 07-CV-7755-GBD, 2009 WL 928280, at *5 (S.D.N.Y Mar. 30, 2009) (quoting *Sirohi v. Trustees of Columbia Univ.*, 97-CV-7912, 1998 WL 642463, at * 2 (2d Cir. Apr.16, 1998) ("A breach of contract claim will withstand a motion to dismiss only if plaintiff "allege[s] the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated.")).

"In contract law, 'essential terms' are those terms that are necessary to lend an agreement sufficient detail to be enforceable by a court."  *See Reyes v. Lincoln Auto. Fin. Services*, 861 F.3d 51, 58 (2d Cir. 2017); *see also Brookhaven Hous. Coal. v. Solomon*, 583 F.2d 584, 593 (2d Cir. 1978) ("If essential terms of an agreement are omitted or are phrased in too indefinite a manner, no legally enforceable contract will result.").   Under New York law, price or compensation is universally recognized as an essential term of a services contract.  *See Cooper Square Realty, Inc. v. A.R.S. Management, Ltd.*, 181 A.D.2d 551, 551-52, 581 N.Y.S.2d 50, 51 (1st Dep't 1992) ("As price is an essential ingredient of every contract for the rendering of services, an agreement must be definite as to compensation."); *In re Maxwell Commc'n Corp.*, 198 B.R. 63, 68 (S.D.N.Y. 1996) (referring to *price* as "the most basic essential term" and finding that "[w]ithout an agreement as to the amount of compensation, such an agreement is unenforceable"); *see also Best Brands*

6

*Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 590 (2d Cir. 1987) (finding that essential terms were lacking where agreement did not contain "representations or promises relating to price").

BBCP has not attached the purported written contract to the Complaint.  Instead, it confusingly alleges that "Premium and [BBCP] have an agreed **oral and/or written agreement**, *i.e.*, a contract for services…that…was based on the terms negotiated by Walmart with Premium, [which] were agreed to by Premium and [BBCP]…." (Compl. ¶¶ 115-116 (emphasis added)). BBCP makes no attempt to allege when this purported agreement was formed, the necessary facts to show that a meeting of the minds occurred, or whether a writing that contains the essential terms even exists.

The allegations in the Complaint that purport to describe the alleged agreement fail to state "the most basic essential term," *i.e.* compensation.  For instance, BBCP alleges that "Premium's service and fee structure was designed to be less expensive in price than its competitors," but then never identifies the fee structure.  (*Id*. at ¶ 22).  At times, BBCP seems to indicate the fee structure relates to specific services by alleging that "Premium has been inflating its bills and charging for services which were never provided."  (*Id*. at ¶ 40).  At other times, BBCP seems to argue that the fee structure is hourly by alleging that "Premium has unilaterally increased the number of hours it is allegedly serving stores, and thus, the number of hours it is billing for..."  (*Id*. at ¶ 57).  In fact, it is unclear whether the fee structure was ever part of the agreement (whether written or oral) because BBCP alleges that "Premium switched to a more expensive and less transparent and accountable fee structure, namely, 5% of retail sales instead of a fee structure based on staff hours." (*Id*. at ¶ 72).  BBCP is in a trick bag: the only price term it sufficiently identifies (*i.e.*, "5% of retail sales") it also expressly disclaims as a *violation* of the alleged agreement it purports to sue under.

(*Id*. at ¶ 98 ("That new payment model is also a violation of Premium's agreement with [BBCP] to bill for services based on the actual number of hours conducted by Premium.")).  None of these allegations, individually or taken together, are sufficient to set forth the essential terms of the alleged contract between Premium and BBCP.

In sum, BBCP goes to great lengths to describe Premium's alleged failures under the alleged contract, but fails to plead much more.[1]  BBCP does not attach a copy of any alleged written contract (if it even exists); makes no attempt to articulate the essential terms of an alleged contract, oral or written; and fails to plead any facts demonstrating a meeting of the minds between the parties as to any contractual terms, much less the essential contractual terms of price, quantity and duration.  As a result, BBCP's breach of contract claim in Count I should be dismissed for failure to state a claim upon which relief can be granted.

**POINT II**

**BBCP FAILED TO STATE A CLAIM FOR
BREACH OF EXPRESS WARRANTIES**

BBCP's claim for breach of express warranties in Count II should be dismissed because BBCP failed to allege the existence of *any* express warranties made by Premium.  "To prevail on a claim of breach of express warranty, a plaintiff must show an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon." *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 F. App'x 110, 111-12 (2d Cir. 2010) (quoting *Schimmenti v. Ply Gem Indus., Inc.*, 156 A.D.2d 658, 659, 549 N.Y.S.2d 152, 154 (2d Dep't 1989)).  "In order to demonstrate that an express warranty was

---

[1]BBCP does allege that it paid Premium a total of "$4,065,865 for calendar year 2018." (*Id*. ¶ 54).  However, there is a clear difference between the amount a party seeks to recover in damages (for instance, in a quasi-contractual action) and the fixed price term of an agreement (which BBCP refuses to provide).

8

created under New York law, a plaintiff must 'prove that the statement falls within the definition of a warranty, that [plaintiff] relied on it, and that it became part of the basis for the bargain.'" *Kraft v. Staten Island Boat Sales, Inc.,* 715 F.Supp.2d 464, 473 (S.D.N.Y.2010) (quoting *Daley v. McNeil Consumer Prod., Co.*, 164 F.Supp.2d 367, 377 (S.D.N.Y.2001)).   Moreover, a plaintiff cannot rely on legal conclusions and, instead, "must allege where, when or how the alleged promise or statement was provided to [it]." *See Fisher v. APP Pharm., LLC*, 783 F.Supp.2d 424, 431 (S.D.N.Y.2011) ("Plaintiff's failure to allege any specific words, promises or statements … that would create an express warranty is fatal to the claim.  The claim of Breach of Express Warranty is dismissed against all Defendants.").

Notwithstanding the foregoing prerequisites, BBCP has not pled *any* facts regarding where, when, or how the purported express warranties were made.  *See Gelber v. Stryker Corp.*, 788 F.Supp.2d 145, 166 (S.D.N.Y.2011) (complaint failed to state claim for breach of express warranty under New York law absent allegations of where alleged representations appeared or to whom they were made); *Cordova v. Smith & Nephew, Inc.*, 14-CV-351-JFB-ARL, 2014 WL 3749421, at *8 (E.D.N.Y. July 30, 2014) (complaint did not state a breach of warranty claim where plaintiff alleged in a "wholly conclusory fashion" that defendant "breached express warranties" that product "would be safe to use" and was "inspected and accepted in accordance with … recognized safety standards").

Under New York law, therefore, Count II must be dismissed because BBCP is required, at a minimum, to allege where, when, or how the alleged warranties were communicated by Premium to BBCP, but utterly failed to do so.  As a result, BBCP failed to state a claim for breach of express warranties upon which relief can be granted.

## POINT III

### <u>BBCP'S CLAIM FOR UNJUST ENRICHMENT IS PRECLUDED<br>BY BBCP'S CLAIM FOR BREACH OF CONTRACT</u>

BBCP has placed Premium, and this Court, in an impossible position.  BBCP's claim for breach of contract is clearly insufficient; however, BBCP's failure to offer any detail about the contract (including even whether it was written or oral) also infects the rest of its Complaint. Indeed, the viability of BBCP's breach of contract claim directly affects its claim for unjust enrichment in Count III, in that, as drafted, BBCP's unjust enrichment claim must be dismissed as duplicative of its contractual claims.

"Where a valid contract governs the subject matter in a lawsuit, a plaintiff may not recover in quasi-contract, and it is appropriate to dismiss a claim for unjust enrichment."  *Statler v. Dell, Inc.*, 775 F.Supp.2d 474, 485 (E.D.N.Y.2011); *see also Chiarelli v. Nissan N. Am., Inc.*, 14-CV-4327 NGG VVP, 2015 WL 5686507, at *18 (E.D.N.Y. Sept. 25, 2015); *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193, 70 N.Y.2d 382, 388 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.").  In *Dell,* for example, the court dismissed the plaintiff's unjust enrichment claim, since the goods at issue were covered by a warranty contained in a contract between the plaintiff and the defendant.  *Dell*, 775 F.Supp.2d at 485.  Here, BBCP alleged that a contract exists between it and Premium and, even alleged the breach of express warranties like those at issue in *Dell*.  (Compl. at ¶¶ 115, 128-34).  In short, BBCP does not allege any grounds for unjust enrichment that exist separate and apart from its purported grounds for breach of contract and breach of express warranties.

Accordingly, because BBCP's claim for unjust enrichment in Count III is duplicative of its breach of contract claim in Counts I and II, it should be dismissed for failure to state a claim upon which relief can be granted.

## POINT IV

### BBCP'S FRAUD CLAIM IS RIDDLED WITH PLEADING DEFECTS REQUIRING ITS DISMISSAL

BBCP's fraud claim in Count IV must be dismissed because (1) BBCP failed to plead fraud with sufficient particularity as required under Rule 9(b); (2) the fraud alleged by BBCP is premised upon the same facts as its breach of contract claim; and (3) BBCP's claim for lost profits is barred under New York's "out-of-pocket" rule.

#### A.    BBCP Failed To Plead Fraud With Particularity As Required By Rule 9(b)

"In order to prove fraud under New York law, 'a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *Norguard Ins. Co. v. RCJ Constr. Servs. Corp.*, 14-CV-00432, 2018 WL 1178034, at *3 (E.D.N.Y. Jan. 19, 2018) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.* 98 F.3d 13, 19 (2d Cir. 1996)).

"When fraud is asserted [the Court] must also view the complaint in light of Rule 9(b), which requires that 'the circumstances constituting fraud...be stated with particularity.'" *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127 (2d Cir. 1994) (quoting Fed. R. Civ. P. 9(b)). Rule 9(b) "requires that the plaintiff '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" *See*

*Eternity Global Master Fund, Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)).

Moreover, this Court must disregard BBCP's allegations based "upon information and belief" in determining whether BBCP's fraud allegations satisfy the requirements of Rule 9(b). *See Clopay Corp. v. Shemesh*, 17-CV-10194-JPO, 2018 WL 6025867, at \*2 (S.D.N.Y. Nov. 16, 2018) (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Rule 9(b) pleadings cannot be based upon information and belief.").  Here, BBCP substantially relies on allegations made "on information and belief" to support its fraud claim.  (Compl. at ¶¶ 74-77, 83, 86, 87, 90, 92, 96, 99, 102, 110, 144).  These allegations are categorically insufficient under Rule 9(b) and warrant dismissal of BBCP's entire fraud claim.

Even if BBCPs' allegations "upon information and belief" could properly be considered by this Court (under New York law, they cannot be), BBCP's Complaint fails to allege sufficient facts to meet the heightened pleading requirements of Rule 9(b) in numerous respects.  BBCP alleges the following *categories* of misrepresentations by Premium, *none* of which contain the requisite level of detail to satisfy Rule 9(b): Premium allegedly misrepresented the "number of hours spent at various stores," that it was "sending representatives to regularly visit and service…stores," that it "had the capacity to provide the…services," that it "falsely reported store visits," and that it sent false invoices.  (*Id*. at ¶¶ 29-31, 141, 142, 146, 148).[2]  Instead, BBCP relies almost entirely on conclusory allegations of fraud.  BBCP fails to plead *any* facts regarding the identity of the speaker making the alleged representations, the time of the representations, or the

---

[2] BBCP also alleges that, on information and belief, certain Premium executives made "false and defamatory statements in December 2018 about [BBCP] and its executives…." (Compl. at ¶ 180).  Even if this paragraph had not been made "on information and belief" and had contained the requisite level of detail required by Rule 9(b), this paragraph is not incorporated into BBCP's fraud count.

place of the alleged representations.  Standing alone, the absence of such allegations requires dismissal of BBCP's fraud claim.  *See Priority Fulfillment Servs., Inc. v. Gaiam Americas Inc.*, 17-CV-5504-PAE, 2018 WL 5981950 (S.D.N.Y. Nov. 14, 2018) (holding that "general averments [that] lack particularity as to time, place, and speaker" are insufficient to overcome a motion to dismiss under Rule 9(b)); *see also Ferrari Club of Am., Inc. v. Bourdage*, 6:12-CV-06530-EAW, 2017 WL 6419061, at *3 (W.D.N.Y. Apr. 25, 2017).

Accordingly, BBCP's fraud claim in Count IV should be dismissed for failure to satisfy the pleading requirements of Rule 9(b).

**B.     BBCP's Fraud Claim Is Precluded By Its Breach Of Contract Claim**

Even if this Court believes that BBCP alleged sufficient facts to overcome the heightened pleading standards under Rule 9(b) (it clearly has not), BBCP's fraud claim is precluded by its breach of contract claim because the alleged fraud arises from the alleged breach of contractual duties by Premium, and should therefore be dismissed.

"[A] contractual promise can only support a claim for fraud upon proof of fraudulent intent not to perform the promise at the time of contract execution."  *See U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 662 (2d Cir. 2016); s*ee also McKernin v. Fanny Farmer Candy Shops, Inc.,* 176 A.D.2d 233, 234 574 N.Y.S.2d 58, 59 (2d Dep't 1991) (noting that where a fraud claim "is premised upon an alleged breach of contractual duties … a cause of action sounding in fraud does not lie"); *Weider Health & Fitness v. Austex Oil Ltd.*, 17-CV-2089-RMB-OTW, 2018 WL 5919521, at *3 (S.D.N.Y. Nov. 13, 2018); *Metropolitan Transp. Auth. v. Triumph Advertising Productions,* 116 A.D.2d 526, 527, 497 N.Y.S2d 673, 675 (1st Dep't 1986) (dismissing fraud claim based upon "only a breach of the representation of performance"); *Papa's–June Music, Inc. v. McLean,* 921 F.Supp. 1154, 1162 (S.D.N.Y.1996) (dismissing fraud claim where "[t]he complaint does not allege a fraud claim that is sufficiently distinct from the breach of

contract claim" but "merely appends allegations about [defendant's] state of mind to the claim for breach of contract"); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996).

BBCP cannot transmogrify a claim for breach of contract into a claim for fraud simply because it wishes to intimidate Premium with a tort claim.  Notably, the following allegations of the Complaint, which BBCP contends relate to fraud, actually relate to the performance of an alleged contractual duty:

> 142.   Premium also represented that it would provide all those services for [BBCP's] clip strip products at Walmart.
>
> 143.   Premium also subsequently represented that it had provided all those services.
>
> 145.   Furthermore, Premium has also falsely represented the extent of the services conducted in Walmart's stores.
>
> 148.   Premium also sent invoices falsely representing that those services had been provided, and charging for those services.

(Compl. at ¶¶ 142-143, 145, 148).  Each of the above allegations relates to the performance of Premium's contractual duties under the alleged contract.[3]  Such allegations are insufficient to state a claim for fraud.  *McKernin*, 176 A.D.2d at 234, N.Y.S.2d at 59.[4]

Because BBCP's claim for fraud is premised upon the same conduct as its breach of contract claim, Count IV of the Complaint must be dismissed.

---

[3]BBCP does allege in paragraph 144 that "Premium intended to deceive [BBCP] by claiming that it would perform the above-mentioned services, when Premium knew that it would not and/or could not." (Compl. at ¶ 144).  This allegation, however, must be disregarded because it is made "upon information and belief."

[4]Notably, even BBCP's claims regarding Premium's state of mind fail.  For instance, any suggestion that, at the time of contract execution, Premium never intended to perform under the "oral and/or written" agreement between the parties is directly undermined by BBCP's allegations that Premium did in fact perform.  (Compl. at ¶ 41 ("Premium began performing its merchandising services program in January 2018")).

**C.     To The Extent It Seeks To Recover Lost Profits, BBCP's Fraud Claim Is Barred By The "Out-of-Pocket" Rule**

Even if this Court believes that BBCP's fraud claim has been sufficiently pled and is not precluded by BBCP's breach of contract claim, BBCP's claim for lost profits is barred by operation of New York's "out-of-pocket" rule.  "Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud" because "[d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained." *Lama Hldg. Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373, 646 N.Y.S.2d 76, 80 (N.Y. 1996); *Allison v Round Table Inv. Mgt. Co., LP*, 10-CV-01144-GBD, 2010 WL 4456648, at *6 (SDNY Oct. 22, 2010).

Stated differently, "[t]he true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the 'out-of-pocket' rule." *Southwestern Invs. Group, LLC v. JH Portfolio Deb Equities, LLC*, 169 A.D.3d 1510, 1511, 93 N.Y.S.3d 775, 775 (4th Dep't 2019).  "A misrepresentation is tortious, therefore, only if it causes out-of-pocket losses." *AHW Inv. P'ship, MFS, Inc. v. Citigroup Inc.*, 661 Fed. Appx. 2, 5 (2d Cir. 2016).  Here, BBCP seeks to recover lost profits as damages under its fraud claim.  (Compl. ¶ 164 ("[BBCP] was damaged in the amount of payments made by Best Brands to Premium, and the amounts falsely billed by Premium, **as well as the lost sales caused by Premium's underperformance, in an amount to be determined by the jury in this matter**." (emphasis added)).  Such recovery is expressly precluded under New York law.  *Lama Hldg. Co.*, 668 N.E.2d at 1373-1374, 646 N.Y.S.2d at 80.  "There can be no recovery of profits which would have been realized in the absence of fraud."  *Id.*  Accordingly, BBCP's claim for lost profits in Count IV should be dismissed because it is barred by New York's "out-of-pocket" rule.

## POINT V

**BBCP FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH *EITHER* A CONTRACT *OR A* PROSPECTIVE BUSINESS RELATION**

As an initial matter, Count V appears to state two causes of action where only one can exist.  BBCP's game of hide the ball is just another desperate attempt to avoid the dismissal of claims that are clearly defective.  Regardless, BBCP's allegations fail to state a claim for *either* tortious interference with contract *or* tortious interference with prospective business relations.  Stated differently, it does not matter which legal theory BBCP chooses; both are doomed as a matter of law.

### A.    BBCP Fails To State A Claim For Tortious Interference With Contract

To state a claim for tortious interference with contract, BBCP is required to plead: "[1] the existence of a valid contract between the plaintiff and a third party, [2] defendant's knowledge of that contract, [3] defendant's intentional procurement of the third-party's breach of the contract without justification, [4] actual breach of the contract, and [5] damages resulting therefrom." *Rich v. Fox News Network, LLC*, 18-2321-CV, 2019 WL 4383204, at *10 (2d Cir. Sept. 13, 2019) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375, 88 N.Y.2d 413, 424 (N.Y. 1996)).  "[A] plaintiff must allege that the contract would not have been breached but for the defendant's conduct." *Burrowes v. Combs*, 25 A.D.3d 370, 373, 808 N.Y.S.2d 50, 53 (1st Dep't 2006).  Moreover, under New York law, a plaintiff who brings a tortious interference claim must allege that the defendant was not a party to the contract.  *See Cohen v. Davis*, 926 F. Supp. 399, 404 (S.D.N.Y. 1996); *see also Winicki v. City of Olean,* 203 A.D.2d611 N.Y.S.2d 379, 380 (4th Dep't 1994) (only "a stranger to a contract" may be liable for tortious interference); *Israel v. Wood Dolson Co.*, 134 N.E.2d 97, 99, 1 N.Y.2d 116, 119 (N.Y. 1956).

Assuming BBCP's claim in Count V is for tortious interference *with* contract, BBCP fails to allege at least two elements of the claim: (1) that Premium was not a party to the contract at issue, and (2) that Premium intentionally procured the third party's breach of a contract with BBCP.  (Compl. at ¶¶ 167-178).  As an initial matter, BBCP makes no affirmative allegation that a third party, namely Walmart, breached its contract with BBCP.  The only allegation that even comes close to suggesting that Premium intentionally procured some third party's breach of contract states only that Premium "induced Walmart to shift Premium's rate model to a new and higher payment model based on [BBCP's] retail sales."  (*Id.* at ¶ 96).  Then, to further confuse matters, BBCP alleges that this "new payment model is *also* a violation of Premium's agreement with [BBCP] to bill for services…." (*Id.* at ¶ 98 (emphasis added)).  To be clear, if the consequence of Premium's tortious interference also constitutes a violation of Premium's "oral and/or written agreement" with BBCP, then Premium cannot possibly be a third-party stranger to the contract. *See Cohen*, 926 F. Supp. at 404.

In short, BBCP failed to state a claim for tortious interference *with contract* because it does not plead certain required elements and, in fact, negated those same elements with other allegations.

### B.    BBCP Fails To State A Claim For Tortious Interference With Prospective Business Relations.

To state a claim for tortious interference with prospective business relations, a plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *See Von Rohr Equip. Corp. v. Tanner Bolt & Nut Corp.*, 17-CV-2913-NGG-

RER, 2017 WL 5184676, at *7 (E.D.N.Y. Nov. 7, 2017) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (internal quotation marks and citation omitted).

As an initial matter, there is no allegation that Premium acted "solely out of malice." Nor does BBCP allege, beyond mere recitation of the elements, how Premium employed "dishonest, unfair or improper means." BBCP cannot allege such matters because the alleged conduct by Premium (even if true) was justified by Premium's economic interest. Specifically, under New York law, actions taken to protect an economic interest are justified and cannot give rise to a tortious interference claim. *See Kusch v. Mishkin (In re Adler, Coleman Clearing Corp.),* 95-08203 JLG, 1998 WL 551972, at *19 (Bankr. S.D.N.Y. Aug. 24, 1998); *see also Barrett v. Toroyan*, 39 A.D.3d 366, 366, 833 N.Y.S.2d 497, 497 (N.Y. 2007).

Here, BBCP's own allegations demonstrate that Premium was justified in allegedly contacting Walmart. BBCP alleges that: (i) BBCP refused to pay Premium's invoices for a period of several months in 2018; (ii) Walmart was responsible for negotiating the terms of the purported contract between BBCP and Premium as part of Walmart's entire clip strip program; and (iii) after BBCP stopped paying Premium's invoices, Premium contacted Walmart to discuss issues related to the relationship between BBCP and Premium. (Compl. at ¶¶ 19, 81 171). In short, in response to BBCP refusing to pay its invoices, Premium allegedly approached the third-party who allegedly negotiated the terms of the agreement between BBCP and Premium as part of a broader clip-strip program. Such alleged conduct by Premium is the very essence of justification to protect Premium's economic interests. In short, BBCP cannot state a viable claim for tortious interference with prospective business relations against Premium because its own allegations demonstrate that Premium's alleged actions were justified.

**C.     BBCP's Tortious Interference Claims Is Duplicative Of Its Breach Of Contract Claim.**

Regardless of whether BBCP alleged tortious interference with contract or with prospective business relations, Count V should be dismissed on the additional, independent ground that it is duplicative of BBCP's breach of contract claim.  "As a general rule, tortious interference claims that are duplicative of contract claims are precluded." *Horowitz v. Nat'l Gas & Elec., LLC*, 17-CV-7742-JPO, 2018 WL 4572244, at *7 (S.D.N.Y. Sept. 24, 2018) (quoting *Choquette v. Motor Info. Sys., Inc.*, 15-CV-9338-VEC, 2017 WL 3309730, at *6 (S.D.N.Y. Aug. 2, 2017).   That general rule, however, does not categorically prohibit parallel tortious interference and breach of contract claims, but it requires that the tort claim is based on "a duty that spring[s] from circumstances extraneous to and not constituting elements of, the [parties'] contract." *Id.* (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 194, 70 N.Y.2d 382, 389 (N.Y. 1987)).

Here, BBCP has not alleged that its tort claim is based on duties extraneous to the parties' alleged agreement.  How can it?  As discussed above, BBCP refuses to attach or sufficiently identify the agreement.  BBCP likely cannot disentangle its tortious interference claim from its breach of contract claim.  Indeed, the alleged interference was comprised of statements made to Walmart about BBCP's performance under an agreement negotiated by Walmart and part of Walmart's broader business relationship with BBCP.  In short, there is no isolated tort separate from the purported contractual breaches BBCP alleged.

BBCP's Count V claim for tortious interference cannot be salvaged under any legal theory and, even were this not the case, BBCP's claim is precluded by its Count I claim for breach of contract.  In light of the foregoing, BBCP's claim for tortious interference in Count V should be dismissed.

# POINT VI

# COUNT VI FOR TRADE DEFAMATION FAILS TO STATE A VIABLE CLAIM

In Count VI, BBCP continues to obscure its claims to evade dismissal. Indeed, while Count VI of the Complaint is titled "trade defamation," BBCP appears to assert "facts" to support a claim for common law defamation. This tactic is again unavailing and fails to cloud Premium's clear right to dismissal of this claim as a matter of law.

### A.     BBCP Fails To State A Claim For Trade Defamation Because It Does Not (and Cannot) Allege Special Damages

BBCP fails to plead adequate facts to establish special damages, as required under New York law; accordingly, its trade defamation claim in Count VI should be dismissed.

Under New York law, "the tort of trade defamation is the knowing publication of a false matter derogatory to the plaintiff's business calculated to prevent or interfere with relationships between the plaintiff and others to its detriment." *Jin Yung Chung v. Sano*, 10-CV-2301-DLI-CLP, 2011 WL 1298891, at *6 (E.D.N.Y. Mar. 31, 2011) (quoting *Jurlique, Inc. v. Austral Biolab Pty., Inc.,* 187 A.D.2d 637, 639, 590 N.Y.S.2d 235, 236 (2d Dep't 1992)). "The communication must play a material and substantial part in inducing others not to deal with plaintiff." *Id.* The result of the communication must be that "special damages, in the form of lost dealings, are incurred," and "[i]n pleading special damages, actual losses must be identified and causally related to the alleged tortious act." *Waste Distillation Tech. v. Blasland & Bouck Engs., P.C.,* 136 A.D.2d 633, 634, 523 N.Y.S.2d 875, 877 (2d Dep't 1988); *see also Collins v. Travers Fine Jewels Inc.*, 16-CV-03780-SN, 2017 WL 1184305, at *3 (S.D.N.Y. Mar. 29, 2017) ("Special damages must be "fully and accurately stated, with sufficient particularity to identify **actual losses**.") (emphasis added).

The requirement of pleading (and ultimately proving) special damages goes to the cause of action itself and not merely to recovery. *Kirby v. Wildenstein*, 784 F. Supp. 1112, 1116 (S.D.N.Y.

1992).  Indeed, a "plaintiff will be denied even nominal or punitive damages if he cannot show special damage, since in such a case no cause of action at all is established." *Prosser & Keeton on Torts*, 5th ed. (1984 & supp.1988), § 128 at 971.  Notably, courts considering product disparagement claims have applied this requirement strictly, granting motions to dismiss or for summary judgment for failure to allege special damages with the requisite specificity.  *See, e.g., Angio–Medical, supra; Drug Research, supra; Christopher Lisa Matthew Policano, Inc. v. North American Precis Syndicate, Inc.,* 129 A.D.2d 488, 514 N.Y.S.2d 239 (1st Dept.1987); *Lincoln First Bank v. Siegel,* 60 A.D.2d 270, 400 N.Y.S.2d 627 (4th Dept.1977).

Here, BBCP makes no attempt to plead special damages associated with its allegations of trade defamation.  BBCP alleges the following categories of damages it allegedly sustained: that " [BBCP was forced] to pay the outstanding invoices issued by Premium[,]" and that there was a "decrease [in] the volume of business conducted by [BBCP] at Walmart."  (Compl. at ¶¶ 189, 190).  Neither of these allegations of damages satisfies the pleading requirements for special damages under New York law.[5]

Because it has made no attempt to assert special damages (because none exist), BBCP's claim for trade defamation should be dismissed as a matter of law.

**B.    BBCP Cannot Salvage Its Failed Trade Defamation Claim Under A Common Law Theory Of Defamation**

In Count VI, BBCP includes numerous allegations which have no bearing on trade defamation but *might* relate to other theories of defamation.  To the extent BBCP argues that Count VI can be salvaged under some other common law theory of defamation, BBCP again misses the

---

[5]Further, BBCP's allegation that it was forced to pay outstanding invoices is not causally-linked to any of Premium's alleged statements.  By BBCP's own admission, its obligations to pay the Premium invoices arose prior to and independent of any alleged statements by Premium to Walmart.  (Compl. ¶ 81 ("[BBCP] ceased making further payments to Premium in March 2018.")).

mark.  Indeed, there are at least two fatal defects that prevent BBCP from recovering under *any* theory of defamation: first, BBCP failed to plead sufficient facts to support a claim for common law defamation; and second, BBCP's defamation claim seeks to recover damages for statements of protected opinion.  Each of these defects, standing alone, warrants dismissal of Count VI of the Complaint.

First, BBCP failed to plead sufficient facts to support any claim for common law defamation.  To state a claim for defamation under New York law, a plaintiff must show that: (1) the defendant published a defamatory statement of fact to a third party, (2) the statement of fact was false, (3) the false statement of fact was made with the applicable level of fault, and (4) either the false statement was defamatory per se or caused the plaintiff special harm.  *Chandok v. Klessig,* 632 F.3d 803, 814 (2d Cir. 2011).  "Where a complaint alleges claims for defamation without any indication as to what statements were made, when they were made, or to whom they were made, for instance, the claims warrant dismissal under Rules 12(b)(6) and 8(a)(2)."  *U.S. ex rel. Smith v. New York Presbyterian Hosp.*, 06-CV-4056-NRB, 2007 WL 2142312, at *14 (S.D.N.Y. July 18, 2007).  Allegations of defamation "are not actionable [if] plaintiff failed to set forth the '**exact words**' complained of and the time, place and manner of the purported defamation."  *Offor v. Mercy Med. Ctr.,* 171 A.D.3d 502, 503, 98 N.Y.S.3d 69, 70 (1st Dep't 2019) (internal citation and quotation omitted).

Here, simply put, BBCP must plead sufficient detail to give Premium notice of the alleged defamatory statements.  *See In Touch Concepts, Inc. v. Cello P'ship,* 949 F.Supp.2d 447, 484 (S.D.N.Y. 2013) (dismissing defamation claim against corporate defendants when plaintiff failed to allege which defendant made defamatory statement); *Camp Summit of Summitville, Inc. v. Viniski,* 06-CV-4994-CM-GAY, 2007 WL 1152894, at *12 (S.D.N.Y. Apr. 16, 2007) (dismissing

defamation claim that failed to allege "who at [defendant organization] made the defamatory remarks, nor to whom the comments were made").

It is undisputed that BBCP has not alleged the exact words of the alleged defamatory statements, or other facts necessary to state a claim for defamation.  BBCP again resorts to alleging facts "upon information and belief" to hedge its general accusation that certain Premium executives "made false and defamatory statements…."  (Compl. ¶ 180).  Noticeably absent from these allegations is the manner in which the alleged defamatory statements were communicated, the exact words of the representations, the exact date they occurred, or even the identities of the individuals making or hearing the statements.  Such lack of specificity is fatal to BBCP's claim under New York law.  *See In Touch Concepts,* 949 F.Supp. 2d. at 484.

To the extent the Court believes that BBCP alleged sufficient facts to state a claim for defamation (it has not), BBCP's defamation claim should still be dismissed on the independent grounds that the complained-of statements by Premium were privileged, and thus non-actionable as a matter of law.   Specifically, New York affords qualified protection to defamatory "communication[s] made by one person to another upon a subject in which both have an interest." *Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001); *Liberman v. Gelstein*, 605 N.E.2d 344, 349, 80 N.Y.2d 429, 434 (N.Y. 1992).   As explained above, BBCP's own allegations amply demonstrate that a defamation claim cannot lie against Premium because Premium and Walmart both had an economic interest in the subject matter of the alleged defamatory statements by virtue of a financial and business relationship with BBCP that included (or at the very least was negotiated by) Walmart.  *See, infra,* at pp. 19-20. For example, BBCP alleges that Premium made representations to Walmart regarding BBCP's performance under an agreement to which Premium is allegedly a party, and in which Walmart also had a vested interest. (Compl. at ¶¶ 19-20, 180).

These allegations demonstrate that any alleged defamatory statements by Premium were privileged, and are not actionable as a matter of law. The only allegation in the Complaint to the contrary is so conclusory that it should be disregarded by this Court.  (*See* Compl. at ¶ 185).

In light of the foregoing, BBCP's trade defamation claim in Count VI must be dismissed.

### POINT VII

### ALTERNATIVELY, BBCP SHOULD BE REQUIRED TO PROVIDE A MORE DEFINITE AND CERTAIN STATEMENT OF ITS CLAIMS

Rule 12(e) provides that: "If a pleading to which a responsive pleading is permitted is **so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading**, the party may move for a more definite statement before interposing a responsive pleading." *See* Fed. R. Civ. P. 12(e) (emphasis added).  "A 12(e) motion applies … where a pleading is 'sufficiently intelligible for the district court to make out one or more potentially viable legal theories ... sufficient to survive a Rule 12(b)(6) motion...[but] the pleading [is] also so vague or ambiguous that the opposing party cannot respond to it...without prejudice to himself.'" *See Ulloa v. Takata Corp., TK Holdings Inc.*, 16-CV-6225-KMW-BCM, 2017 WL 1194691, at *2 (S.D.N.Y. Mar. 30, 2017) (quoting *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 443 (S.D.N.Y. 2005)); *Olsson v Vertis Communications*, 09-CV-5428-GBD, 2009 WL 5194979, at *1 (S.D.N.Y. Dec. 29, 2009) ("The rule is designed to remedy unintelligible pleadings.").

As set forth in detail above, the Complaint is vague, ambiguous and even incoherent at numerous crucial junctures.  For instance, BBCP purports to sue Premium on the existence of an alleged "oral and/or written agreement" between the parties.  How can Premium file an answer to

24

this claim without prejudicing itself?[6]  In connection with its fraud and trade defamation claims, BBCP fails to allege any specific facts regarding the time, place, manner or substance of the alleged statements.  How can Premium tailor discovery to investigate such claims or begin to defend against the same at trial?  The Complaint is so totally lacking in detail to be, at times, functionally unintelligible.  Absent a more definite statement, this lawsuit will be mired in guesswork and waste both the parties' and the Court's time and resources.  This Court should require BBCP to make its Complaint more definite and certain on numerous issues, including but not limited to the status of the contract being sued upon, the specific terms of any such contract, the specific warranties allegedly made by Premium, the special damages allegedly sustained by BBCP, and the specific statements and surrounding circumstances supporting BBCP's claims for fraud and defamation.

## <u>CONCLUSION</u>

Defendant Premium respectfully requests that the Court dismiss the Complaint or, in the alternative, enter an order directing BBCP to make any surviving claims more definite and certain.

HERRICK, FEINSTEIN LLP

By: /s/ Ronald J. Levine_____
Ronald J. Levine
rlevine@herrick.com
Two Park Avenue
New York, NY 10016
Tel: 212-592-1400

---

[6]For instance, absent identifying the agreement being sued upon, Premium (and this Court) cannot adequately determine whether a different jurisdiction's laws govern Plaintiff's breach of contract claim.  Absent a controlling provision in a written agreement (which may or may not exist), the parties cannot even adequately engage in a choice-of-law analysis.  *See GlobalNet Financial.Com, Inc. v. Frank Crystal & Co.*, 449 F.3d 377, 383 (2d Cir. 2006) (quoting *Fieger v. Pitney Bowes Credit Corp.,* 251 F.3d 386, 395 (2d Cir.2001) (recognizing "several factors which should be considered in a conflict of law analysis," including "center of gravity" or "grouping of contacts" as factors to be applied in determining the choice of law)).  As a result of Plaintiff's failure to allege sufficient facts regarding the origin of the purported contract, Premium expressly reserves the right to assert in the future that Plaintiff's claims are governed by the substantive law of a state or states other than New York.